EXHIBIT 1

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT #3753
Assistant U.S. Attorney

WILLIAM L. SHIPLEY
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: William.Shipley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 2 9 2004

at 12 o'clock and 45 min. __M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. CR04 00371 DAE |
| Plaintiff, | ) | |
| vs. | ) | INDICTMENT |
| WALTER Y. ARAKAKI, | ) | 18 U.S.C. § 1341 - Mail Fraud |
| Defendant. | ) | |

I N D I C T M E N T

SEALED
BY ORDER OF THE COURT

ATTEST: A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii
By_____
                Deputy

The Grand Jury charges that:

<u>COUNTS 1 THROUGH 4</u>:
(18 U.S.C. § 1341 - Mail Fraud)

I. <u>BACKGROUND</u>

1. At all times material to this Indictment and as set forth herein:

   a. Defendant WALTER Y. ARAKAKI was a resident of the County of Honolulu, State of Hawaii.

   b. Walter Y. Arakaki, General Contractor, Inc., was incorporated in Hawaii on July 31, 1975, with Defendant WALTER Y. ARAKAKI as its President.

   c. "D.H.," an unindicted co-conspirator, was an employee of the Hawaii Department of Transportation, Oahu Airport District.

2. Defendant WALTER Y. ARAKAKI, acting through his business interests, including Walter Y. Arakaki, General Contractor, Inc., performed construction, maintenance, and repair work for the State of Hawaii at the Honolulu International Airport, with nearly all the contracts for such work falling within the procurement provisions for purchase contracts under $25,000.

3. From July 1, 1998, to June 30, 2000, the appropriate process for the issuance of maintenance and repair contracts on the grounds or facilities of the Honolulu

International Airport for a cost of less than $25,000 was supposed to be as follows:

    a. Maintenance or repair projects were most commonly initiated by way of a "Trouble Call" form (hereinafter referred to as a "TC") which described the nature and location of the problem, and to which photographs were often attached.

    b. TC's were ordinarily routed to the Maintenance Superintendent at the Honolulu International Airport, who determined whether the maintenance or repair project should be resolved by the in-house maintenance staff workers employed by the State of Hawaii Department of Transportation at the Honolulu International Airport, or was more appropriately handled by a private contractor or vendor.

    c. If, after review of the project - sometimes including consultation with the in-house maintenance supervisors - it was determined that the project was beyond the scope or abilities of the in-house maintenance staff, the Maintenance Superintendent referred the TC to the Oahu Maintenance Engineer at the Honolulu International Airport (hereinafter referred to as "OME") for solicitation of quotes from private contractors or vendors pursuant to the rules and regulations governing procurement of such services.

4. Pursuant to the Hawaii Revised Statutes, and the regulations and policies of the state agencies involved in the

administration of public finances expenditures, a contract for the purchase of construction services for a cost of less than $25,000 - a "small purchase contract" - is awarded through the following process:

    a. A State of Hawaii contracting official (hereinafter "contracting official") solicits at least three quotes in relation to the scope of work determined to be necessary by the contracting official.

    b. The contracting official identifies the lowest quote and submits a Purchase Requisition for approval.

    c. If approved, a Requisition and Purchase Order is issued authorizing the purchase of construction services in accord with the Purchase Requisition.

    d. A notice is issued to the vendor or contractor that submitted the lowest bid, authorizing the commencement of work.

    e. Following the satisfactory completion of the work called for in the Requisition and Purchase Order, the vendor or contractor submits an invoice to initiate the payment process.

    f. Upon approval of the invoice by the contracting official indicating satisfactory completion of the project, the invoice is submitted for the processing of payment by the Department of Accounting and General Services.

g. The Department of Accounting and General Services issues payment, referred to as a "Warrant", along with a Summary Warrant Voucher, which sets forth the Purchase Order number, vendor number, warrant amount, and "Warrant Routing Indicator" ("WRI") which reflects the manner in which the Warrant was delivered to the vendor or contractor - by mail or otherwise.

5. "Parceling" of contracts was the practice of dividing a large construction, maintenance, or repair project into a series of small purchase contracts, each for an amount of less than $25,000, for the purpose of avoiding the procurement regulations concerning larger contracts. Construction, maintenance, or repair projects that were anticipated to cost in excess of $25,000 were to be awarded pursuant to a more formal award process which included public notice and sealed bids from qualified contractors. "Parceling" of large projects into a series of small purchase contracts to avoid the sealed bid requirements was prohibited by the State of Hawaii laws and regulations concerning such contracts.

THE SCHEME AND ARTIFICE TO DEFRAUD:

6. From a specific time unknown, but not later than on or about July 1, 1998, to on or about no earlier than June 30, 2000, in the District of Hawaii and elsewhere, Defendant WALTER Y. ARAKAKI, along with others both known and unknown to the grand jury, knowingly devised and intended to devise a scheme and

artifice to defraud and a scheme and artifice for obtaining money from the State of Hawaii by means of material false and fraudulent pretenses, representations and promises, as well as omissions of material fact.

7. In the process of obtaining quotes for "small purchase contracts" for maintenance, repair and construction work, D.H. bypassed established contracting procedures by directing OME personnel to contact only one contractor - not three as required governing procedures - for the purpose of obtaining quotes for TCs.

8. D.H. directed OME personnel to contact Defendant ARAKAKI alone for the purpose of obtaining a quote for specific TCs, including renovation and repair of a boathouse on the airport grounds.

9. Upon receiving a request to submit a quote for a maintenance, repair, or construction project from the OME, Defendant ARAKAKI submitted, or caused to be submitted, not only a quote on behalf of his company as designated by D.H., but he also submitted, or arranged to be submitted, two additional quotes in the name of other companies to create the appearance that three quotes were obtained by OME in relation to the project. These additional two quotes were often referred to as "complimentary bids," and the OME personnel understood that they

were to accept these two "complimentary bids" in lieu of soliciting quotes from two additional vendors or contractors.

10. Defendant ARAKAKI submitted, or caused to be submitted, "complimentary bid" quotes usually in the names of, and on the letterhead of four companies in which he had no ownership or control, and for the purposes of this Indictment they are referred to as ABC, SDI, ACI, and KEC.

11. In some instances the "complimentary bids" were prepared by Defendant ARAKAKI using a blank quote form bearing the letterhead of one of the other companies. In other instances the owners of other companies provided the "complimentary bid" without the intention of bidding competitively.

12. In each instance set forth in this Indictment, the quote provided by Defendant ARAKAKI on behalf of his company as specified by D.H. was lower than the "complimentary bids" submitted, or caused to be submitted, by Defendant ARAKAKI in the names of other companies.

13. Through the submission and acceptance of such "complimentary bids," as well as the parceling of contracts, there was no actual competition for the award of the contract for the maintenance, repair, or construction work described in the TC. The contracts awarded to Defendant ARAKAKI's company, as well as the invoices submitted by that company for payment, were

falsely and fraudulently inflated above a fair and reasonable value for the work allegedly performed.

14.  Following completion of the maintenance, repair, or construction project for which the contract was awarded, Defendant ARAKAKI caused payment to be mailed back to his company by submitting, or causing to be submitted, false and fraudulent inflated invoices in relation to the maintenance, repair, or construction project.

THE MAILINGS

15.  On or about the dates listed below, within the District of Hawaii, and elsewhere, for the purpose of carrying out the scheme and artifice to defraud, defendant WALTER Y. ARAKAKI did knowingly cause to be delivered to the United States Postal Service the mail matter described below, to be placed in a post office and an authorized depository for mail matter to be sent and delivered by the United States Postal Service:

| Count | Date | Description and Addressee |
|---|---|---|
| 1 | August 4, 1999 | State of Hawaii Warrant No. S0010087 payable to Walter Y. Arakaki, General Contractor Inc., in the amount of $24,987.80. |
| 2 | August 6, 1999 | State of Hawaii Warrant No. S0010959 payable to Walter Y. Arakaki, General Contractor Inc., in the amount of $24,999.82. |
| 3 | August 10, 1999 | State of Hawaii Warrant No. S0011866 payable to Walter Y. Arakaki, General Contractor Inc., in the amount of $24,006.31. |

| 4 | October 28, 1999 | State of Hawaii Warrant No. S0038652 payable to Walter Y. Arakaki, General Contractor Inc., in the amount of $24,622.01. |

All in violation of Title 18, United States Code, Section 1341.

## SENTENCING ALLEGATIONS

1. With respect to Counts 1 through 4 of the Indictment, the loss exceeded $40,000.

2. With respect to Counts 1 through 4 of the Indictment, the offense involved more than minimal planning.

DATED: September 29, 2004, at Honolulu, Hawaii.

A TRUE BILL

/s/ L Lee

FOREPERSON, GRAND JURY

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ J. Michael Seabright

J. MICHAEL SEABRIGHT
Assistant U.S. Attorney

/s/ William L. Shipley

WILLIAM L. SHIPLEY
Assistant U.S. Attorney

United States v. Walter Y. Arakaki
"Indictment"

9